EILEEN A. ARMSTRONG,　　　　　　:　**CIVIL NO. 1:08-CV-0963**
　　　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　:　(Magistrate Judge Smyser)
　　　　　　　　　　　　　　　　:
ANTIQUE AUTOMOBILE CLUB of　　:
AMERICA, HERSHEY REGION OF THE :
ANTIQUE AUTOMOBILE CLUB OF　　:
AMERICA, INC. and HERSHEY　　　:
ENTERTAINMENT & RESORTS COMPANY:
　　　　　　Defendants　　　　:
　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
HYLAN GRAY,　　　　　　　　　　:
　　　　　　Third Party　　　　:
　　　　　　Defendant　　　　　:

## **MEMORANDUM AND ORDER**

## **A.  Background.**

The plaintiff, Eileen A. Armstrong, commenced this
action in the United States District Court for the Northern
District of Illinois against Hylan Gray ("Gray") and the
Antique Automobile Club of America, Inc. ("AACA").  The
plaintiff alleged that while attending an AACA meet in
Hershey, Pennsylvania in October 2006 she was struck by a
vehicle driven by Gray and injured.

The case was subsequently transferred to this court.
On September 22, 2008, with leave of court, the plaintiff
filed an amended complaint.  The amended complaint names as

defendants AACA, the Hershey Region of the Antique Automobile Club of America ("HRAACA") and Hershey Entertainment & Resorts Company ("HE&R"). The defendants filed third party complaints against Hylan Gray seeking indemnity or contribution. Also, HE&R filed crossclaims seeking indemnity or contribution against defendants AACA and HRAACA and defendants AACA and HRAACA filed crossclaims seeking indemnity or contribution against HE&R.

This Order addresses the following *in limine* motions: Motion *in Limine* of Defendants Hershey Entertainment and Resorts Company, Antique Automobile Club of America, Inc. and Hershey Region of the Antique Automobile Club of America, Inc. (Doc. 103); Plaintiff's Motion *in Limine* to Support the Admissibility of Economic Damages (Doc. 119); Plaintiff's Motion *in Limine* to Preclude the Testimony of Defendants' Proffered Expert, Len McCuen (Doc. 109); Defendants' Motion *in Limine* to Limit the Amount of Plaintiff's Medical Bills Pursuant to *Moorehead v. Crozer* (Doc. 110); Plaintiff's Motion *in Limine* to Preclude Evidence of or Reference to Her Previous Back Surgeries, Fibromyalgia, and Depression (Doc. 115); and Plaintiff's Motion *in Limine* to Preclude Evidence of Her Settlement with Hylan Gray (Doc. 117).

**B. Discussion.**

> 1. Defendants' Joint Motion in Limine and Plaintiff's Motion in Limine to Support the Admissibility of Economic Damages.

We will initially address the joint motion (Doc. 103) *in limine* of defendants HE&R, AACA and HRAACA. This motion presents two issues: 1) whether the defendants are permitted to pursue their contribution claims against third-party defendant Gray, and 2) whether the plaintiff is precluded from offering evidence of or referring to any medical expenses that were paid, or will be paid, by first party insurance benefits. The second issue is also the subject of the plaintiff's motion (Doc. 119) *in limine* to support the admissibility of economic damages.

The first issue raised by the defendants' joint motion *in limine* is whether they are permitted to pursue their contribution claims against third-party defendant Gray notwithstanding a release by the plaintiff of third-party defendant Gray.

The plaintiff and third-party defendant Gray came to a settlement arrangement during the pendency of this case, and the plaintiff executed a release. *See Doc. 103-3.*

The release is titled "Release of All Claims." *Id.* The release provides that for a lump sum of $250,000.00 the plaintiff does:

> release, acquit and forever discharge <u>Hylan Gray, Lynn Gray and Allied Property and Casualty Insurance Company, a Nationwide Company</u> of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity, of whatever nature, and all consequential damages on account of, or in any way growing out of any and all known and unknown personal injuries, death and/or property damage resulting or to result from an accident that occurred on or about the <u>4th</u> day of <u>October</u>, 20<u>06</u>, at or near <u>Old Hershey Park Entrance and Hershey Park Access, Derry Township, Dauphin County, Pennsylvania.</u>

*Id.* The release further provides that the plaintiff acknowledges that she is responsible for the satisfaction of any applicable liens and claims and that she agrees to indemnify and hold "<u>Hylan Gray, Lynn Gray and Allied Property and Casualty Insurance Company, a Nationwide Company</u>" harmless from "any such liens and claims should they be

4

asserted against such individual and/or Insurance Company."
*Id.*

The defendants argue that the effect of the release on their contribution claims against Gray is governed by Pennsylvania law and that under Pennsylvania law they may pursue their contribution claims against Gray notwithstanding the release. In their motion *in limine*, the defendants state that "upon information and belief, Defendant Gray intends to take the position that Illinois law applies to the Release in this case." *Doc. 103* at 6.

Under Pennsylvania law, a "release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another tort-feasor, unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued and provides for a reduction to the extent of the pro rata share of the released tort-feasor of the injured person's damages recoverable against all the other tort-feasors." 42 Pa.C.S.A. § 8327. In contrast, under Illinois law, a tortfeasor who in good faith settles with a claimant

"is discharged from all liability for any contribution to any other tortfeasor." 740 Ill. Comp. Stat. 100/2(d).

Although the defendants state in their motion *in limine* their belief that third-party defendant Gray intends to take the position that Illinois law applies to the release, third-party defendant Gray has not taken that position. In his brief in opposition to the defendants' motion *in limine*, third-party defendant Gray does not contend that Illinois law governs the effect of the release on the defendants' contribution claims against him.[1] Rather, citing a Pennsylvania case, third-party defendant Gray contends that the release at issue, although not expressly providing for a *pro rata* set-off mechanism, has the effect of a *pro rata* release and that, therefore, the defendants can not pursue their contribution claims against him. We construe third-party defendant Gray's argument to be that under Pennsylvania law the defendants can not pursue their contribution claims

---

[1] Third-party defendant Gray does state in a footnote in his brief that the State of Illinois has an interest in having its laws apply. However, mentioning an issue in passing in a footnote is not sufficient to raise the issue. Moreover, that Illinois has an interest in having its laws apply is not determinative of whether Pennsylvania law or Illinois law applies and third-party defendant Gray has not addressed the applicable choice-of-law considerations.

against him because the release is in effect a *pro rata* release.

Given that no party has argued that any law other than Pennsylvania law applies to the issue of the effect of the release on the defendants' contribution claims against third-party defendant Gray, we will not engage in an extended discussion of the choice-of-law issue. Nevertheless, having considered the issue and given that the accident occurred in Pennsylvania, that the plaintiff was injured in Pennsylvania, that the defendants are Pennsylvania corporations, that the relationship of the parties is centered in Pennsylvania in that all parties were purposefully in Pennsylvania when the accident occurred, that Pennsylvania has a substantial interest in having its law applied to a dispute that concerns the consequences of torts committed within its borders and that Pennsylvania's interest in having its law applied outweighs any interest on the part of Illinois of having its law applied regarding the effect of a release, we conclude that Pennsylvania law applies. *See Restatement (Second) Conflict of Laws* § 145 and § 173. *See also Shields v. Consolidated Rail Corp.*, 810 F.2d 397 (3d Cir. 1987)

(discussing Pennsylvania choice-of-law issues with respect to third-party action for contribution).

We next turn to the question whether under Pennsylvania law the defendants may pursue their contribution claims against third-party defendant Gray notwithstanding the release.  As set forth above, under Pennsylvania law, a release by the plaintiff of one tortfeasor does not relieve the tortfeasor from liability to make contribution to other tortfeasors, unless the release "provides for a reduction to the extent of the pro rata share of the released tort-feasor of the injured person's damages recoverable against all the other tort-feasors." 42 Pa.C.S.A. § 8327.  Thus, resolution of the issue in this case turns on whether the release is a *pro rata* release.

The Pennsylvania Supreme Court has explained the difference in effect between a *pro tanto* release and a *pro rata* release:

> Where a plaintiff and settling defendant sign a *pro tanto* release, then the plaintiff's ultimate recovery against the nonsettling joint tortfeasors is the total award of damages reduced by the amount of consideration paid for the release.  In contrast, if the parties sign

a *pro rata* release (which is also known as an
"apportioned share set-off" release), then the
plaintiff's ultimate recovery against the
nonsettling tortfeasors is the total award of
damages reduced by the settling party's
allocated share of the liability."

*Baker v. ACandS,* 755 A.2d 664, 666 n.1 (Pa. 2000). If the
release is silent on the issue, then the set-off mechanism
defaults to a *pro tanto* set-off. *Id.* at 667.

Third-party defendant Gray acknowledges that a *pro
rata* set-off mechanism is not expressly set forth in the
release. Nevertheless, he contends, the release obligates
the plaintiff to indemnify and hold him harmless from any
contribution claims of the defendants and, therefore, the
release has the same effect as a *pro rata* release.

There is a difference between a provision in a release
that provides for a reduction of any award to the plaintiff
to the extent of the *pro rata* share of the released
tortfeasor and a provision that the plaintiff must indemnify
the released tortfeasor for any contribution claims made
against the released tortfeasor. Although the net effect

ultimately might be the same, the mechanism is very different in the two situations.

If the release is construed as a *pro rata* release then the plaintiff's ultimate recovery against the defendants is the total award of damages reduced by third-party defendant Gray's allocated share of the liability. In that situation, if third-party defendant Gray's allocated share of the liability is more than he paid pursuant to the release, then the plaintiff is not paid that amount and there is no contribution claim by the defendants because by definition the defendants will not have paid more than their allocated share.

In contrast, if the release is construed as a *pro tanto* release with a provision requiring the plaintiff to indemnify third-party defendant Gray for any contribution claims against him, then the plaintiff's recovery in this case against the defendants is the total award of damages reduced by the amount of consideration paid by third-party defendant Gray for the release. In that situation, if third-

party defendant Gray's allocated share of the liability is more than he paid pursuant to the release, then the defendants are liable to the plaintiff for that amount, the defendants can obtain contribution from third-party defendant Gray for that amount and third-party defendant Gray will have to seek (in a separate suit, if necessary) indemnity from the plaintiff for that amount.

Since the release in the instant case does not provide for a reduction of the plaintiff's damages recoverable against the defendant to the extent of the *pro rata* share of third-party defendant Gray, the release is not a *pro rata* release and, pursuant to 42 Pa.C.S.A. § 8327, the release does not relieve third-party defendant Gray from liability to make contribution to the defendants.

Since under Pennsylvania law, the release does not shield third-party defendant Gray from the contribution claims of the defendants, we will grant the defendants' joint motion *in limine* to the extent that it seeks an order providing that they are permitted to pursue their contribution claims against third-party defendant Gray.

The second issue raised by the defendants' joint motion *in limine* is whether the plaintiff is precluded from offering evidence of or referring to any medical expenses that were or will be paid by first party insurance benefits. This is also the issue raised by the plaintiff's motion *in limine* to support the admissibility of economic damages.

"It is well-settled that a plaintiff in a personal injury action seeking damages for the cost of medical services provided to him as a result of a tort-feasor's wrongdoing is entitled to recover the reasonable value of those medical services." *Kashner v. Geisinger Clinic,* 638 A.2d 980, 983 (Pa.Super.Ct. 1994). *See also Moorehead v. Crozer Chester Medical Center,* 765 A.2d 786, 789 (Pa. 2001)("Pennsylvania case law allows a plaintiff to recover the reasonable value of medical services."). "Under Pennsylvania law, the "collateral source" doctrine permits a tort victim to recover more than once for the same injury provided these recoveries come from different sources." *Smith v. United States,* 587 F.2d 1013, 1015 (3d Cir. 1978). "Thus, for example, an accident victim may recover medical expenses from a tortfeasor even though the victim's own insurance policy covers such costs." *Id.* "The principle behind the

collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong." *Johnson v. Beane*, 664 A.2d 96, 100 (Pa. 1995). Another "rationale for the doctrine is that 'one can justify a double recovery where the original source was supplied by the plaintiff, himself, out of resources that would otherwise have been available to him for other purposes.'" *Smith, supra,* 587 F.2d at 1015 (quoting *Feeley v. United States,* 337 F.2d 924, 928 (3d Cir. 1964)). "In some circumstances, there may be no double recovery at all because the plaintiff may be legally obligated to repay his original source of reimbursement, under the doctrine of subrogation." *Feeley, supra,* 337 F.2d at 928.

Given the collateral source rule, the plaintiff is not precluded from recovering the reasonable and necessary medical expenses caused by the defendants' tortious actions even if those expense have been paid by plaintiff's insurance.

Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL) generally precludes a plaintiff from recovering

13

in an action for damages against a tortfeasor arising out of the use of a motor vehicle the amount of benefits paid or payable by a program, group contact, or other arrangement. 75 Pa.C.S.A. § 1722. "This statutory abrogation of the common law collateral source rule is designed to prevent double recovery by accident victims." *O'Malley, v. Vilsmeier Auctions Co.,* 986 F.Supp. 306, 308 (E.D.Pa. 1997).

Section 1722 of the MVFRL must be read in conjunction with Section 1720 of the MVFRL which provides that there is no right of subrogation or reimbursement from a claimant's tort recovery of benefits paid or payable by a program, group contact, or other arrangement. 75 Pa.C.S.A. § 1720. However, the anti-subrogation provision of Section 1720 can not be enforced against an out-of-state insurer with out-of-state insureds. *Gagnon v. Lemoyne Sleeper Co., Inc.,* 1:CV-05-2081, 2008 WL 5061677 at *3 (M.D.Pa. Nov. 20, 2008)(Kane, C.J.). Since Section 1720 can not be enforced against an out-of-state insurer, it would not serve the interests of Pennsylvania law and it would be unfair to enforce the anti-recovery provision of Section 1722 in a case where the plaintiff is not a Pennsylvania resident and is insured by an out-of-state insurer with subrogation rights. *Id.*

14

In the instant case, the plaintiff is a resident of Texas and she is insured by an out-of-state insurer. The plaintiff has presented evidence that her insurer has a contractual right of subrogation as to the payments for medical expenses that it has paid. S*ee doc. 120-4 & 120-2.* Accordingly, Section 1722 of the MVFRL does not apply in this case and is not a bar to the plaintiff offering evidence of or referring to medical expenses that were or will be paid by insurance benefits.

The defendants contend that the plaintiff can not recover medical expenses that were paid by first party insurance benefits because the release given by the plaintiff to third-party defendant Gray includes a provision requiring the plaintiff to satisfy all subrogation liens. The defendants contend that the provision requiring the plaintiff to satisfy liens applies generally and not just to liens or claims asserted against third-party defendant Gray. Thus, the defendants contend that they are entitled to benefit from that provision of the release. We disagree.

The release provides that the plaintiff acknowledges that she is responsible for the satisfaction of any

applicable liens and claims and that she agrees to indemnify and hold "Hylan Gray, Lynn Gray and Allied Property and Casualty Insurance Company, a Nationwide Company" harmless from "any such liens and claims should they be asserted against such individual and/or Insurance Company." *Doc. 103-3.* The defendants are not identified in the release by name or by description. The provision regarding the satisfaction of liens and claims does not apply to them and they are not entitled to benefit from that provision.

In a related argument, the defendants argue that they are entitled to pursue contribution claims against third-party defendant Gray and that the plaintiff's obligation under the release to satisfy all liens under the release would be meaningless unless it also applied to them. They argue that the release provision would be meaningless unless it also applied to them because if it did not apply to them and the plaintiff recovered her insurance-paid medical expenses from them, they could then in turn recover those same amounts from third-party defendant Gray and thus the plaintiff in effect would be permitted to recover indirectly from third-party defendant Gray what she could not recover directly because of the release. This argument is also

without merit.  Again, the provisions of the release do not apply to the defendants and they are not entitled to benefit from those provisions.  Moreover, it is not necessarily true that if the plaintiff were permitted to recover from the defendants her medical expenses paid by insurance that the defendants would in turn be able to recover that same amount from third-party defendant Gray.  The defendants are entitled to contribution from third-party defendant Gray only to the extent that they are required to pay the plaintiff more than their fair share of her damages.  Thus, it is not necessarily true that they would be entitled to contribution from third-party defendant Gray for all of the medical expenses they are required to pay to the plaintiff, and the plaintiff's obligation under the release to satisfy all liens would not be meaningless unless it also applied to the defendants.

In sum, the release does not preclude the plaintiff from recovering her medical expenses paid by insurance.

The defendants also contend that, if the court determines that the plaintiff may recover for medical expenses paid by insurance, they are willing to stipulate to the amount of those benefits, that given such a stipulation

there is no relevance at trial to the amount of benefits[2], and that, therefore, the plaintiff should be precluded from offering any evidence of the amount of medical expenses at trial.  If the parties stipulate as to the amount of medical expenses recoverable by the plaintiff, that stipulation will be read to the jury and no evidence of the amount of medical expenses will be necessary or permitted.[3]

The defendants also contend that in connection with her motion *in limine* to support the admissibility of economic damages the plaintiff is now seeking to recover for medical treatment that she did not disclose in discovery.[4]  The

---

[2] The defendants assert that the only purpose that could be served by admitting evidence of the amount of the plaintiff's medical expenses would be to imply to the jury that it should consider those expenses in determining plaintiff's pain and suffering.  However, as the above discussion indicates, the plaintiff is not precluded from recovering her medical expenses as a element of her damages.  Thus, evidence of the amount of such medical expense would be relevant to the plaintiff's claim for such expenses - a purpose other than determining pain and suffering.

[3] Of course, a stipulation as to the amount of medical expenses would not preclude the plaintiff from presenting evidence as to the type of medical treatment that she received.

[4] The defendants also object to the plaintiff seeking to recover for medical treatment by physicians where she has failed to establish a causal relation between the accident and the injuries allegedly treated by these physicians.  Trial is the time when the plaintiff is required to prove her damages.

defendants contend that for this reason the plaintiff's motion *in limine* seeking approval of those medical expenses should be denied.

The discovery deadline in this case was May 15, 2009. However, the parties have acknowledged that the plaintiff is continuing to undergo medical treatment. That was confirmed in the telephone conference with the court regarding the plaintiff's motion to continue trial. At this point, we do not have enough information to conclude that particular medical expenses should be excluded on the basis that they were not timely disclosed. Accordingly, the plaintiff's motion *in limine* seeking approval of those medical expenses will not be denied on that basis.

In summary, we will grant the defendants' joint motion *in limine* to the extent that it seeks an order providing that they are permitted to pursue their contribution claims against third-party defendant Gray. We will deny the defendants' joint motion *in limine* to the extent that it seeks an order precluding the plaintiff from offering evidence of or referring to any medical expenses that were or will be paid by first party insurance benefits with the

proviso that if the parties stipulate as to the amount of medical expenses recoverable by the plaintiff that stipulation will be read to the jury and no evidence of the amount of medical expenses will be necessary or permitted. We will grant the plaintiff's motion *in limine* to support the admissibility of economic damages again with the proviso that if the parties stipulate as to the amount of medical expenses recoverable by the plaintiff that stipulation will be read to the jury and no evidence of the amount of medical expenses will be necessary or permitted.

> 2. Plaintiff's Motion in Limine to Preclude the
> Testimony of Defendants' Proffered Expert, Len McCuen.

The plaintiff has filed an *in limine* motion addressing an evidentiary issue of potential expert opinion testimony for the defendants. (Doc. 109). The plaintiff asks the court to exclude testimony from Len McCuen, whose report sets forth an opinion that the layout of the car show was safe. The plaintiff asserts that the opinion is not admissible under Rule 702 of the Federal Rules of Evidence. The defendants argue that there is an adequate basis in facts and data for the McCuen opinion(s) and that the methodology used

is reliable and that the application of the methodology to the facts is reliable as well.

Mr. McCuen reports that he "examined [the site] and the circumstances of the incident" and analyzed these "in order to determine the safety of the show grounds as provided and operated and to determine any possible responsibility for the accident." (Doc. 114, Exhibit 5, p. 1). He reviewed his process of examination (*id.* at pp. 2-9), set forth a discussion (*id.* at pp. 9-12) and stated his opinion (*id.* at p. 12):

> My, opinion, based on a reasonable degree of engineering, architectural, and human factors certainty, is as follows:
>
> The primary cause of the accident was the manner in which Mr. Gray operated his vehicle. Specifically, he cut the corner too close considering that he was pulling a trailer. There was plenty of room to make the left turn had he been driving properly. He also needed to be paying attention to any pedestrians in the vicinity of the intersection.
>
> Mrs. Armstrong was not paying attention to the fact that she was near the main entrance show vehicles would be using to gain access to the show. This should have been particularly clear given that it was early in the day of the first day of the show. She also was standing in the vehicle lane. Mrs. Armstrong's actions contributed to the accident.
>
> The show was laid out safely and in a manner consistent with this type of festive public

> field event. Hershey Region AACA's and HERCO's
> operation of the event was completely
> satisfactory and again, consistent with such
> shows. It was not in violation of any
> applicable codes, standards, or regulations.
> They could not reasonably have been expected to
> foresee that a driver or a pedestrian would
> have difficulty with the accommodations as
> claimed. Hershey Region AACA's and HERCO's
> actions met standard accepted practice for the
> provision and operation of such large-scale
> assembly events. They met the duty of care
> owed to patrons of auto shows and meets
> including Eileen Armstrong.

We agree with the plaintiff that there is not a basic presentation of a reliable methodology that was used by Mr. McCuen in the evaluation as to the degree of safeness of the car show setting. The opinion is simply a statement of judgmental conclusions as to the issues the fact finder must decide in this case.

A car show setting is one in which tents, pedestrians, cars, trucks, trucks hauling trailers and other vehicles are interspersed and in motion. The McCuen report does not make a showing of a methodology that can reasonably be seen to lead to a reliable determination of the safety or of the degree of safeness to pedestrians of either such settings in general or of this one such particular setting.

The plaintiff was struck by a trailer being towed by a truck being driven by Hylan Gray, who was at the time executing a turn within the location of the car show. Mr. McCuen, if permitted to testify as an expert, would be presenting a statement that Hylan Gray cut his turn too short and that Gray was not adequately vigilant about pedestrians and he would state an opinion that the plaintiff as a pedestrian did not exercise adequate caution.

Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A reliable opinion as to the safeness or lack of safeness for pedestrians of car shows in general or of a particular car show's configuration and combination of temporary structures, stationary and moving vehicles of various kinds including trucks hauling trailers, general and ad hoc rules and customs and practices affecting traffic

patterns, and communications to pedestrians to assure their safety, would certainly assist the trier of fact.  The issue of reliability is the issue that concerns us here.

A court should consider a number of factors in evaluating whether a methodology is reliable including: 1) whether a method consists of a testable hypothesis; 2) whether the method has been subject to peer review; 3) the known or potential rate of error; 4) the existence and maintenance of standards controlling the technique's operation; 5) whether the method is generally accepted; 6) the relationship of the technique to methods which have been established to be reliable; 7) the qualifications of the expert witness testifying based on the methodology; and 8) the non-judicial uses to which the method has been put. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 247-48 (3d Cir. 2008).

As to the safety of the layout of this car show and of the operation of this setting, where various sizes and kinds of vehicles were present along with a temporary configuration of tents and roadways, and where pedestrians moved throughout the same setting, and where the rules of the road ordinarily

applicable on public thoroughfares were not necessarily

applicable, the expert would say, as summarized by the

defendants:

> the event was a professional operation that was
> fully supervised, well staffed, and well
> coordinated with police, emergency services,
> in-house security, and others; that the staff
> was properly qualified; and that the show was
> laid out safely, consistent with the type of
> event, and not in violation of any applicable
> codes, standards, or regulations.

These opinion(s) are not shown to be reliable.  No method is

apparent.  The exact and actual data supporting the opinions

is not described.  There is no precedent for the proposition

that, even assuming a setting that is basically like other

settings for these kinds of events, conformity with other

shows in these areas of event planning, supervision,

security, staffing and services is relevant to the issue of

due care.  The summary of McCuen's putative testimony and the

Report do not show that an opinion has been formed based upon

a methodology that will yield testimony that will assist the

jury.  The motion to preclude the witness from testifying

will be granted.

> 3. Defendants' Motion in Limine to Limit the Amount of
> Plaintiff's Medical Bills Pursuant to *Moorehead v.*
> *Crozer.*

We will next address the defendants' joint motion to limit the evidence of the plaintiff's medical bills. The defendants ask the court for an *in limine* ruling that the amount of medical expenses to be claimed by the plaintiff at trial be limited to the aggregate amounts actually paid by her insurance carriers and the amount that she paid out of pocket. (Doc. 110). A brief in support was filed. (Doc. 111). No opposing brief was filed. The defendants rely upon *Moorhead v. Crozer Chester Medical Center,* 564 Pa. 156, 765 A.2d 786 (Pa. Supreme Ct. 2001). This motion is unopposed, LR 7.7, and will accordingly be granted. Pursuant to *Moorhead,* the plaintiff will not be permitted to recover amounts written off by her medical providers.

> 4. Plaintiff's Motion in Limine to Preclude Evidence of or Reference to Her Previous Back Surgeries, Fibromyalgia and Depression.

The plaintiff has filed a motion *in limine*. The plaintiff seeks an order *in limine* precluding the defendants at trial from referring to or discussing the plaintiff's medical condition prior to the accident; in particular, her surgeries, fibromyalgia and depression. (Doc. 115). The defendants in opposition ask the court to be permitted to offer evidence at trial concerning the plaintiff's pre-

existing surgeries and medical conditions "to the extent that plaintiff asserts at trial either an impact on her current enjoyment of life or that she is planning early retirement because of her injuries that are the subject of this action." The defendants do not specify the manner in which they contemplate presenting such evidence, whether from medical reports, witnesses other than the plaintiff or cross-examination of the plaintiff.

A witness may be impeached as to her testimonial assertions.  If the plaintiff at trial testifies and attributes certain conditions or symptoms, or new or changed plans, to the car show accident, and if the defendants have evidence that may be used to impeach such testimony, the plaintiff may be asked on cross-examination about a pre-existing condition or symptom or plan of the plaintiff and may use prior acknowledgments of the plaintiff consistent with the Rules of Evidence.  The plaintiff's motion will be denied to the extent that the motion seeks to exclude such evidence absolutely, but will be granted to the extent that the defendants may not present such evidence or refer to prior medical conditions excepts as appropriate in cross-examination or as validating grounds may arise.

5. Plaintiff's Motion in Limine to Preclude Evidence of Her Settlement with Hylan Gray.

The plaintiff has also filed an *in limine* motion in which the court is asked to preclude evidence from the defendants of the fact of the plaintiff's settlement with defendant Hylan Gray. (Doc. 117). Rule 408 of the Federal Rules of Evidence provides:

> **(a) Prohibited uses.** Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish or accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise the claim, and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
>
> **(b) Permitted uses.** This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Defendant HE&R takes the position that it should be permitted to introduce evidence of the settlement involving the plaintiff and defendant Gray if the plaintiff or any witness testifies about Gray's liability or fault in a manner that is not consistent with the plaintiff's settlement of her claim against Gray.

The court plans to conduct a trial in which witnesses will be limited to testimony as to factual matters based upon personal observation, and not to permit opinions to be stated by witnesses as to questions of law or of mixed fact and law such as fault and liability.  No witness will be permitted by the court to broach the subject of Gray's fault.  All witnesses will be limited to testimony about what the witness saw.

The trial will proceed with instructions to the jury, and a correlative presentation of evidence and arguments, that includes Gray as a defendant, includes no mention of settlement, and instructs the jury to determine liability and damages as to defendant Gray as though there were no settlement.

C. **Order.**

On the basis of the foregoing factors and reasons, **IT IS ORDERED** that the six *in limine* motions are granted and denied as follows: The defendants will be permitted at trial to pursue their contribution claims against third-party defendant Gray, the plaintiff will be permitted at trial to present evidence regarding her medical expenses (excluding any amounts written off by her medical providers) unless the medical expenses are stipulated, the defendant will not be permitted to present opinion testimony from Len McCuen, evidence of the fact of the plaintiff's settlement with defendant Gray will not be permitted at trial, and evidence about the medical conditions of the plaintiff prior to the accident will not be permitted unless it is shown to have specific impeachment justification or there is otherwise shown at trial to be a basis in relevance of such evidence.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: November 9, 2009.